Kevin E. Dinius
Sarah Hallock-Jayne
DINIUS LAW
5680 East Franklin Road, Suite 130
Nampa, Idaho 83687
Telephone: (208) 475-0100
Facsimile: (208) 475-0101
ISB Nos.: 5974, 5745
*kdinius@diniuslaw.com*
*shallockjayne@diniuslaw.com*

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAMUEL TOBIAS, an individual, <br><br> Plaintiff, <br><br> -vs- <br><br> ISRAEL Z. RODRIGUEZ, individually; SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC, a Delaware corporation; SWIFT TRANSPORTATION SERVICES, LLC, a Delaware limited liability company; SWIFT LEASING CO., LLC, a Delaware limited liability company; QUEMETCO, INC., a Delaware corporation; and QUEMETCO WEST, LLC, a Delaware limited liability company, <br><br> Defendants. | CASE NO. _____ <br><br> **COMPLAINT** <br> **and DEMAND FOR JURY TRIAL** |

COMES NOW, the above named Plaintiff, Samuel Tobias, by and through his attorneys of record, Dinius Law, and for a cause of action against the above-named Defendants, COMPLAINS and ALLEGES as follows:

## PARTIES AND JURISDICTION

1. At all times herein mentioned, Samuel Tobias (hereinafter "Plaintiff"), has been, and currently is, a resident of Nampa, Canyon County, Idaho.

2. At all times herein mentioned, Israel Rodriguez, (hereinafter "Defendant Rodriguez"), has been, and currently is, a resident of the State of Texas.

3. At all times herein mentioned, Swift Transportation Company of Arizona, LLC was a limited liability company duly organized and formed under the laws of the State of Delaware, with its principal office in the State of Arizona and at all times herein mentioned was doing business in the State of Idaho.

4. At all times herein mentioned, Swift Transportation Services, LLC was a limited liability company duly organized and formed under the laws of the State of Delaware, with its principal office in the State of Arizona and at all times herein mentioned was doing business in the State of Idaho.

5. At all times herein mentioned, Swift Leasing Co., LLC was a limited liability company duly organized and formed under the laws of the State of Delaware, with its principal office in the State of Arizona and at all times herein mentioned was doing business in the State of Idaho.

6. At all times herein mentioned, Defendant Quemetco, Inc. was a corporation duly organized and formed under the laws of the State of Delaware, with its principal place of business in California.

7. At all times herein mentioned, Defendant Quemetco West, LLC was a limited

liability company duly organized and formed under the laws of the State of Delaware, with its principal place of business in California.

8. The amount in controversy at issue in this action is greater than the sum of $75,000.00, excluding interest and costs, and all parties in this action are from diverse states, making jurisdiction proper according to 28 U.S.C. § 1332.

9. This action is based on federal statutes governing the laws of interstate commerce making jurisdiction also appropriate under 28 U.S.C. § 1331.

10. A substantial part of the events giving rise to this claim occurred in the State of Idaho, making venue appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2).

11. There are state law claims also arising out of the same facts and circumstances as the federal claims at issue, and which form part of the same case or controversy, making jurisdiction for these state law claims appropriate under 28 U.S.C. § 1367(a).

## GENERAL ALLEGATIONS

12. At all times relevant hereto, Plaintiff Tobias was the operator of a 1997 International Harvester Truck ("Plaintiff's vehicle").

13. At all times relevant hereto, Defendant Rodriguez was the operator of a 2012 Kenworth Motor Truck ("Defendant's vehicle").

14. At all times relevant hereto, Defendants Swift Transportation Company of Arizona, LLC and Swift Leasing Co., LLC ("Defendants Swift") were the registered owners of the 2017 Freightliner and the 2012 Wabash trailer which were involved in the incident giving rise to this complaint.

15. Upon information and belief, Defendants Quemetco, Inc., and Quemetco West, LLC ("Defendants Quemetco") own and operate a lead recycling facility which produced the lead ingots that Defendants Swift were transporting on the date of the subject incident.

16. At all times relevant hereto, Plaintiff was a truck driver for Coyote Transportation.

17. At all times relevant hereto, Defendant was a truck driver for Swift Transportation.

18. Defendant Rodriguez was acting as an agent of Defendant Swift at the time of the incident.

19. On or about October 26, 2016, at approximately 7:46 p.m., Defendants Swift vehicle was traveling northbound on Highway 95, near Craigmont, in the State of Idaho, while hauling 22 lead ingots, each weighing approximately 2,000 pounds and operated by Defendant Rodriguez.

20. At the above mentioned date, the Defendants herein named were engaged in interstate commerce in connection with transporting the lead ingots from City of Industry, California to Lewiston, Idaho.

21. On the above-mentioned date and at the above-mentioned location, Defendant Rodriguez rapidly applied the brakes of the Defendant's vehicle in an attempt to avoid hitting deer that had run out in front of the vehicle.

22. When Defendant Rodriguez rapidly applied the brakes, the load he was carrying shifted forward, causing the lead ingots to break through the bulk head of the trailer.

23. As a result of breaking through the bulkhead of the trailer, one of the ingots fell out of the trailer, disconnecting the air lines to the trailer brakes and causing the trailer brakes to lock up.

24. Defendant's vehicle came to a stop in the northbound lane of travel, and one of the 2,000 pound lead ingots came to rest in the middle of the southbound lane.

25. At that same time, Plaintiff was traveling southbound in the Plaintiff's vehicle,

which was carrying two pickup trucks and an SUV, and collided with the lead ingot that had fallen into the southbound lane.

26. The impact with the 2,000 pound lead ingot damaged the front of Plaintiff's truck, resulting in the loss of its front axle and pieces of its driveline.

27. After the impact, Plaintiff's damaged truck continued southbound, crossing over the center line and into the northbound lane before going off the road and coming to rest in a ditch alongside the northbound lane.

28. As the truck entered the ditch, Plaintiff noticed flames coming from the engine compartment and jumped from the vehicle as it was coming to a stop.

29. As Plaintiff's vehicle came to rest in the ditch, the load shifted due to the impact causing all three vehicles on the trailer to break free and fall off the trailer.

30. One of the vehicles struck the Plaintiff, running over him, and causing severe bodily injuries.

31. Defendant Rodriguez was engaged in interstate commerce of the lead ingots when the incident occurred.

32. The Quemetco Defendants failed to adequately secure the ingots in a reasonable and safe manner pursuant to applicable federal regulations governing commercial transport.

33. Defendant Rodriguez and the Swift Defendants failed to inspect and assure that the load was safe for hauling prior to Defendant Rodriguez transporting the ingots, in the manner prescribed by applicable federal regulations for commercial transport.

34. As a direct and proximate result of Defendants' actions, Plaintiff suffered special and general damages, psychological trauma, physical and emotional pain and suffering, and other damages in an amount to be determined with specificity at trial. Plaintiff has also been forced to incur extensive expenses for medical treatment, including ongoing therapy and pain

management and will continue to incur such expenses for such care into the future.

35. As a further direct and proximate result of Defendants' actions, Plaintiff has been unable to work since the subject incident, and is likely to have permanent impairments.

## COUNT ONE
### Negligence:
### Defendant Rodriguez

36. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

37. Defendant Rodriguez had a duty to operate the vehicle in a safe and reasonable manner, under the circumstances existing at the time of the subject incident giving rise to this action.

38. Defendant Rodriguez was in breach of that duty by operating the vehicle in an unreasonable, negligent and/or reckless manner, and by failing to maintain control of the vehicle under the circumstances existing at the moment of the subject incident giving rise to this action.

39. Defendant Rodriguez's failure to maintain a duty of reasonable care in the operation of the vehicle was the actual and proximate cause of the harm suffered by Plaintiff.

40. Defendant Rodriguez's actions were negligent and/or reckless.

41. As a direct and proximate result of Defendant Rodriguez's actions, Plaintiff has been forced to incur extensive expenses for medical treatment, including ongoing treatment and will continue to incur such expenses for such care.

42. As a direct and proximate result of Defendant Rodriguez's actions, Plaintiff has experienced pain and suffering, physical stress and impairment, as well as special damages, including the likelihood of continued future medical care, all stemming from the injuries he sustained in the subject incident and in an amount greater than $75,000.00 to be proven with specificity at trial.

43. Plaintiff reserves this paragraph for the inclusion of the claim for punitive damages pursuant to Idaho Code § 6-1604.

## COUNT TWO
### Negligence Per Se
### Violation of Idaho Code § 49-613

44. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

45. Defendants' failure to properly secure the lead ingots in the trailer resulted in one of the ingots falling out of the trailer into the highway in violation of Idaho Code § 49-613.

46. Defendants' failure to properly secure the lead ingots in the trailer was the direct and proximate cause of the personal injuries sustained by Plaintiff.

47. As such, Plaintiff is entitled to recover monetary damages from Defendants, representing fair and reasonable compensation for the special and general damages suffered by Plaintiff as a result of the wrongful conduct alleged hereinabove in an amount in excess of $10,000.00 to be proven with specificity at trial.

48. Plaintiff reserves this paragraph for the inclusion of the claim for punitive damages pursuant to Idaho Code § 6-1604.

## COUNT THREE
### Respondeat Superior-Negligence:
### Swift Defendants

49. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

50. Defendant Rodriguez had a duty of care to operate the vehicle in a safe and reasonable manner, under the circumstances existing at the time of the subject incident giving rise to this action.

51. Defendant Rodriguez was in breach of that duty by operating the vehicle in an

unreasonable, negligent and/or reckless manner, and by failing to maintain control of the vehicle under the circumstances existing at the moment of the subject incident giving rise to this action.

52. Defendant Rodriguez's failure to maintain a duty of reasonable care in the operation of the vehicle was the actual and proximate cause of the harm suffered by Plaintiff.

53. Defendant Rodriguez's actions were negligent and/or reckless.

54. At the time of the events giving rise to this litigation, Defendant Rodriguez was acting within the course and scope of his employment as a driver for the Swift Defendants.

55. As an employee of the Swift Defendants at the time of the subject incident, the negligent conduct of Defendant Rodriguez is imputable to the Swift Defendants under the doctrine of respondeat superior.

56. As the employers of Defendant Rodriguez, the Swift Defendants are liable for all damages sustained by Plaintiff stemming from the subject incident.

57. As a direct and proximate result of Defendant Rodriguez's actions, Plaintiff has been forced to incur extensive expenses for medical treatment, including ongoing treatment and will continue to incur such expenses for such care.

58. As a direct and proximate result of Defendant Rodriguez's actions, Plaintiff has experienced pain and suffering, physical stress and impairment as well as special damages in an amount greater than $75,000.00 to be proven with specificity at trial.

59. Plaintiff reserves this paragraph for the inclusion of the claim for punitive damages pursuant to Idaho Code § 6-1604.

**COUNT FOUR**
*Negligence Per Se-49 C.F.R. § 392.9*
*Duty of Driver to Inspect Load:*
*Defendants Rodriguez and Swift Defendants:*

60. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

61. Title 49 § 392.9 of the Code of Federal Regulations applies to the inspection of cargo, and cargo securement devices and systems, and in pertinent part states as follows:

> (a) General. A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless—
> (1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§393.100 through 393.136 of this subchapter.
> (b) Drivers of trucks and truck tractors. Except as provided in paragraph (b)(4) of this section, the driver of a truck or truck tractor must-
> (1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial vehicle.
> (2) Inspect the cargo and the devices used to secure the cargo within the first 50 miles after beginning a trip and cause any adjustments to be made to the cargo or load securement devices as necessary, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from the commercial motor vehicle; and
> (3) Reexamine the commercial motor vehicle's cargo and its load securement devices during the course of transportation and make any necessary adjustment to the cargo or load securement devices, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from, the commercial motor vehicle. Reexamination and any necessary adjustments must be made whenever—
> (i) The driver makes a change of his/her duty status; or
> (ii) The commercial motor vehicle has been driven for 3 hours; or
> (iii) The commercial motor vehicle has been driven for 150 miles, whichever occurs first ...

49 C.F.R. § 392.9.

62. The federal regulations as cited impose a statutory duty upon drivers and carriers to assure that cargo such as the lead ingots that the Swift Defendants and Defendant Rodriguez were transporting in this incident are adequately secured, and to inspect and reexamine such cargo at prescribed intervals during transport.

63. The failure on the part of the Swift Defendants and Defendant Rodriguez to assure that the cargo of ingots was adequately secured, and their failure to inspect and reexamine the cargo of ingots at the prescribed intervals as required under the federal regulations, was the direct and proximate cause of the resulting shifting of the cargo while in transit, and the resulting loss of the ingot that fell onto the roadway, when Defendant Rodriguez applied the brakes of the

vehicle in an effort to avoid hitting a deer.

64. The failure on the part of the Swift Defendants and Defendant Rodriguez to assure that the cargo of ingots was properly secured, and their failure inspect and reexamine the cargo of ingots at prescribed intervals during transport was the direct and proximate cause of the resulting harm and physical injuries to Plaintiff.

65. The type of loss of cargo that resulted when the cargo of ingots shifted while in transit in this incident is that type of event which the regulations as cited are designed to prevent.

66. The type of harm suffered by the Plaintiff as a result of the failure of the Swift Defendants and Defendant Rodriguez to adhere to their statutory duty is precisely that type of harm which the regulations were designed to prevent.

67. As a driver operating a vehicle on a public interstate highway, the Plaintiff is within the class of persons that the regulations as cited were designed to protect.

68. As such, Plaintiff is entitled to recover monetary damages from Defendants representing fair and reasonable compensation for the special and general damages suffered by Plaintiff as a result of the wrongful conduct alleged hereinabove in an amount in excess of $75,000.00 to be proven with specificity at trial.

69. Plaintiff reserves this paragraph for the inclusion of the claim for punitive damages pursuant to Idaho Code § 6-1604.

### COUNT FOUR
*Negligence Per Se - 49 C.F.R. §§ 393.100, 393.102 and 393.106*
*Failure to Assure Protection against Shifting or Falling Cargo:*
*Defendant Rodriguez, Swift Defendants and Quemetco Defendants*

70. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

71. Title 49 § 393.100 of the Code of Federal Regulations applies to cargo securement devices and systems, and in pertinent part states as follows:

> (a) Applicability. The rules in this subpart are applicable to trucks, truck tractors, semitrailers, full trailers, and pole trailers.
> (b) Prevention against loss of load. Each commercial motor vehicle must, when transporting cargo on public roads, be loaded and equipped, and the cargo secured, in accordance with this subpart to prevent the cargo from leaking, spilling, blowing or falling from the motor vehicle.
> (c) Prevention against shifting of load. Cargo must be contained, immobilized or secured in accordance with this subpart to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected …

49 C.F.R. § 393.100.

72. Title 49 § 393.102 of the Code of Federal Regulations dictate the minimum performance criteria for cargo securement devices and systems as relates to cargo shifting during deceleration, laterally and during acceleration, and in pertinent part these sections state as follows:

> (b)… If the article is fully contained within the structure of the vehicle, it may be secured in accordance with § 393.106(b).
> (c) Equivalent means of securement. The means of securing articles of cargo are considered to meet the performance requirements of this section if the cargo is:
>> (1) Immobilized, such so that it cannot shift or tip to the extent that the vehicle's stability or maneuverability is adversely affected …

49 C.F.R. § 393.102.

73. Title 49 § 393.106 of the Code of Federal Regulations dictates the general requirements for securing articles of cargo, and in pertinent part states as follows:

> (a) Applicability. The rules in this section are applicable to the transportation of all types of articles of cargo, except commodities in bulk that lack structure or fixed shape (e.g., liquids, gases, grain, liquid concrete, sand, gravel, aggregates) and are transported in a tank, hopper, box, or similar device that forms part of the structure of a commercial motor vehicle …
> (b) General. Cargo must be firmly immobilized or secured on or within a vehicle by structures of adequate strength, dunnage or dunnage bags, shoring bars, tiedowns or a combination of these …

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

49 § 393.106.

74. The federal regulations as cited impose a statutory duty upon parties involved in the interstate transport of cargo such as the lead ingots involved in the subject incident to assure that cargo such as the lead ingots that the Swift Defendants and Defendant Rodriguez were transporting, and which the Quermetco Defendants had loaded onto the transport carrier in this incident, are firmly immobilized or secured on or within a vehicle by structures of adequate strength, dunnage or dunnage bars, shoring bars, tiedowns or a combination of these.

75. The failure on the part of the Quermetco Defendants to firmly immobilize the cargo of lead ingots utilizing a device or devices of adequate strength, was a breach of their statutory duty to secure the cargo of lead ingots in a manner required by the regulations as cited.

76. The failure on the part of the Quermetco Defendants to firmly immobilize the cargo of lead ingots in the manner required by the regulations as cited was a failure to properly secure the cargo of ingots in a manner safe for transport; which, when coupled with the failure of the Swift Defendants and Defendant Rodriguez to assure that the cargo of ingots was properly secured, and their failure inspect and reexamine the cargo of ingots at prescribed intervals during transport, was the direct and proximate cause of the resulting harm and physical injuries to Plaintiff.

77. The type of loss of cargo that resulted when the cargo of ingots shifted while in transit in this incident is that type of event which the regulations as cited are designed to prevent.

78. The type of harm suffered by the Plaintiff as a result of the failure of the Quemetco Defendants, the Swift Defendants and Defendant Rodriguez to adhere to their statutory duty is precisely that type of harm which the regulations were designed to prevent.

79. As a driver operating a vehicle on a public interstate highway, the Plaintiff is

within the class of persons that the regulations as cited were designed to protect.

80. As such, Plaintiff is entitled to recover monetary damages from Defendants representing fair and reasonable compensation for the special and general damages suffered by Plaintiff as a result of the wrongful conduct alleged hereinabove in an amount in excess of $75,000.00 to be proven with specificity at trial.

81. Plaintiff reserves this paragraph for the inclusion of the claim for punitive damages pursuant to Idaho Code § 6-1604.

82. Defendant Rodriguez was operating a commercial vehicle as defined by Federal Motor Carrier Safety Regulations at the time the lead ingot shifted in the trailer and broke through the bulk head of the trailer, causing the subject incident.

## REQUEST FOR ATTORNEY FEES AND COSTS

As a result of Defendants' actions as set forth above, Plaintiff has been required to retain the law firm of Dinius & Associates, PLLC, to prosecute this action and have incurred and will continue to incur costs and attorney fees for which the Plaintiff are entitled to a separate award pursuant to Idaho Code §§ 12-120 and 12-121, and Rule 54(e)(1) of the Idaho Rules of Civil Procedure as well as any other applicable statute or rule, in an amount to be determined by the Court, or, if Judgment is received by default, in the amount of $3,000.00.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury comprised of not less than twelve (12) persons on all issues so triable, pursuant to Idaho Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

1. For a money judgment against Defendants for Plaintiff's medical expenses, future medical costs and expenses, loss of income, pain and suffering, physical and mental anguish in an amount in excess of $75,000.00 to be proven with specificity at trial;

2. For attorney fees incurred in this matter;

3. For costs incurred in the prosecution of this action; and,

4. For such other and further relief as the Court deems just and proper.

DATED this 28th day of September, 2018.

DINIUS LAW

By:_____
Kevin E. Dinius
Sarah Hallock-Jayne
Attorneys for Plaintiff

dd/T:\Clients\T\Tobias, Sam 25424\Complaint.docx